UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISAN CONTANT,

                              Petitioner,                    10 Civ. 3434 (KMK)(PED)

         - against -                                         **REPORT AND**
                                                             **RECOMMENDATION**

WARDEN MARY SABOL,[1]
STATE OF NEW YORK,
WARDEN CRAIG A. LOWE,

                              Respondents.


TO:   THE HONORABLE KENNETH M. KARAS,
      UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

Petitioner Isan Contant, through his counsel,[2] seeks a writ of *habeas corpus* pursuant to
28 U.S.C. § 2254.  Petitioner was convicted on October 3, 2007, following entry of his guilty
plea, in Rockland County Court (Kelly, J.) of one count of criminal possession of a controlled
substance in the third degree.  For this crime, Petitioner was sentenced to a term of one year of
imprisonment plus two years of post-release supervision, as well as a $270.00 penalty
assessment.

     This petition is before me pursuant to an order of reference.  See Dkt. Nos. 10, 32.  For
the reasons set forth below, I respectfully recommend that the petition be **DENIED**.

---

[1] Warden Sabol was terminated as a party on June 23, 2010.

[2] Petitioner initially proceeded *pro se*, but the Court subsequently appointed counsel to
represent him.  See Dkt. No. 22.

## II. BACKGROUND[3]

### A.     The Crime

On April 9, 2006, Petitioner was a passenger in a vehicle that was observed to be driving

erratically on Interstate 87 by two New York state troopers in the Town of Clarkstown, Rockland

County, New York.  After stopping the vehicle, the troopers apparently smelled marihuana, and

the driver of the vehicle admitted that he had smoked marihuana and did not possess a driver's

license.  After failing coordination tests, the driver was arrested.  The troopers searched the

vehicle and asked Petitioner and a second passenger to step outside the vehicle.  The troopers

thereafter observed a bulge in Petitioner's groin area and, upon searching Petitioner, the troopers

recovered from his pants a clear plastic bag containing a white substance that was later confirmed

by laboratory testing to be cocaine, as well as an aluminum foil packet of marihuana.

### B.     The Indictment and Pre-Trial Proceedings

The Rockland County Grand Jury returned an indictment charging Petitioner with one

count of criminal possession of a controlled substance in the third degree, in violation of New

York Penal Law § 220.16(12),[4] and unlawful possession of marihuana, in violation of New York

---

[3] Unless otherwise indicated, the information within this section is taken from a review of the petition ("Pet."), Dkt. No. 1, amended petition ("Am. Pet."), Dkt. No. 5, second amended petition ("2d Am. Pet."), Dkt. No. 31, and Petitioner's reply memorandum of law ("Pet'r's Reply Mem."), Dkt. No. 41; Respondent's affirmation in opposition ("Ciganek Aff."), Dkt. Nos. 37, 44, 45, and memorandum of law in opposition ("Resp't's Mem."), Dkt. No. 38; Petitioner's direct appeal briefs, Ciganek Aff., Exs. C, E, F, GG; and Respondent's direct appeal briefs, Ciganek Aff., Exs. D, G, HH.

[4] "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more . . . ." N.Y. Penal Law § 220.16(12).  Cocaine is a "narcotic drug."  See id. § 220.00(7) (defining "[n]arcotic drug" by reference to New York Public Health Law § 3306); N.Y. Pub. Health Law § 3306, Schedule

Penal Law § 221.05.[5]

Petitioner moved the trial court to suppress the evidence that the police had recovered from his pants during what he claimed had been an unlawful search, but the trial court denied this motion.

## C.     **The Guilty Plea**

Before Petitioner's trial commenced with jury selection on August 7, 2007, Petitioner's trial counsel informed the trial court that Petitioner wished to enter a guilty plea to both charges in the indictment, and Petitioner agreed that this was his intention.  See Ciganek Aff., Ex. A (Aug. 7, 2007 Plea Tr.) at 2–3.  The trial court next asked Petitioner whether he was an American citizen, Petitioner responded "[n]o," and Petitioner's counsel confirmed that Petitioner was from "Trinidad."  Id. at 3.  The trial court thereafter explained that,

> [s]ince you are not an American citizen, as a result of entering a plea of guilty, you may be subject to deportation, exclusion, or removal, and if you have a petition for naturalization pending, it can be denied.  That's one of the direct consequences of entering a plea of guilty when you are not an American citizen. . . .  Prior to the termination of your sentence, you could be paroled or released to the jurisdiction of the immigration authorities for deportation, as well.  That is something that can also happen prior to your completing whatever sentence you receive.

Id. at 4–5.  Petitioner confirmed that he understood, that he had discussed this issue with his counsel, and that, "[n]otwithstanding" these potential immigration consequences, he still wished to plead guilty.[6]  Id.  Petitioner also told the court that he was "very satisfied" with the services

---

II(b)(4) (including cocaine).

[5] "A person is guilty of unlawful possession of marihuana when he knowingly and unlawfully possesses marihuana."  N.Y. Penal Law § 221.05.

[6] As discussed below, Petitioner maintains that, before the plea proceeding began, his trial counsel assured him that any adverse immigration consequences were unlikely.

that had been provided by his trial counsel.  Id. at 5.  The prosecution recommended "four years' incarceration," though the trial court noted that this was an "open plea," that the court was "not making any commitment on sentence," and that Petitioner "could receive anywhere from one to nine years on a determinate sentence," as well as "a period of post-release supervision, which is mandated under the law."  Id. at 6–7.  Petitioner confirmed that he understood the potential sentence that he faced.  Id. at 7.

Petitioner then was placed under oath.  Id.  The trial court thereafter informed Petitioner that, "when you come into the Court and plead guilty, you give up a number of rights that you have."  Id. at 8.  The court then reviewed Petitioner's right to remain silent, right to a jury or non-jury trial, right to testify on his own behalf and to call witnesses to testify on his behalf, and right to confront and cross-examine the witnesses against him.  See id. at 8–9.  Petitioner confirmed that he understood that, by entering a guilty plea, he was "waiving or giving up the rights that [he] otherwise would have."  Id. at 9.  Petitioner thereafter admitted that he knew it was illegal to possess cocaine and that the aggregate weight of the cocaine in his possession on April 9, 2006 was one-half ounce or more.  See id. at 9–10.  The prosecution then read into the record the laboratory report that previously had been provided to defense counsel.  See id. at 10.  This report confirmed that the bag that the troopers had recovered from Plaintiff's pants contained more than half an ounce of cocaine.  See id. at 10–11.  The prosecution confirmed that Petitioner admitted that the troopers had recovered the bag of cocaine from his pants on April 9, 2006, that Petitioner had no reason to dispute the laboratory's conclusions regarding the nature or weight of the substance that was in the bag, and that Petitioner knew it was illegal to possess cocaine.  See id. at 13–14.

4

The prosecution moved to dismiss the marihuana charge because defense counsel apparently had noted that the marihuana that had been tested by the laboratory was not the marihuana that had been recovered from Petitioner's pants, but rather was a "[p]artially-consumed marijuana cigarette" that had been found in the vehicle in which Petitioner had been a passenger. Id. at 11–12. The court granted the prosecution's motion and vacated Petitioner's plea of guilty on that charge. Id. at 12.

The prosecution thereafter stated that it had provided an appellate waiver agreement to Petitioner's trial counsel. See id. at 14. The trial court explained to Petitioner that, by "sign[ing] this Waiver of Right to Appeal," Petitioner had provided a "written acknowledgment . . . that [he is] knowingly and voluntarily waiving [his] appellate rights," which meant that Petitioner was "giving up the right to appeal." Id. at 15. Petitioner confirmed that he understood and had discussed the waiver of his appellate rights with his counsel. See id. at 15–16.

Following Petitioner's allocution and recommendation by the prosecution, the court accepted Petitioner's guilty plea. See id. at 16.

**D.    The Sentencing**

On October 3, 2007, Petitioner appeared for sentencing. See Ciganek Aff., Ex. B (Oct. 3, 2007 Sentencing Tr.). During this proceeding, Petitioner stated that he took "full responsibility for what happened in terms of me possessing the drugs" and that he did not dispute the amount of cocaine that was in his possession as set forth in the laboratory report. Id. at 9. In light of some discrepancies between Petitioner's statements in court and the summary set forth in his pre-sentence report, the court noted that Petitioner "admits possession of all the drugs at sentencing through an allocution" which was "consistent with his position [of] full responsibility." Id. The

5

court then sentenced Petitioner to the minimum sentence of one year of imprisonment and also imposed two years of post-release supervision plus a penalty assessment of $270.00.  Id. at 12–13.  Petitioner thereafter indicated that he wanted to file a notice of appeal.  Id. at 15.  The court noted that Petitioner had waived his appellate rights when he entered his plea of guilty and asked whether Petitioner wished to withdraw his plea.  See id.  Petitioner stated that he did not "want to take [his] plea back."  Id.

E.      **The Immigration Proceedings**

Following Petitioner's conviction, the federal government commenced deportation proceedings against him pursuant to 8 U.S.C. § 1227(a)(2)(B)(i), which provides that "[a]ny alien who at any time after admission [to the United States] has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . is deportable."  8 U.S.C. § 1227(a)(2)(B)(i).  Petitioner received a final order of removal from the United States on September 10, 2010.  On February 8, 2012, Petitioner was deported to Trinidad and Tobago by Immigration and Customs Enforcement.

F.      **The Direct Appeal**

On or about July 31, 2008, Petitioner, through counsel, appealed his conviction to the New York State Appellate Division, Second Department, and raised the following claim:

(1)      Petitioner's sentence was harsh and excessive and should be reduced or modified.

See Ciganek Aff., Ex. C.  Respondent opposed.  See Ciganek Aff., Ex. D.  After receiving leave to do so from the Second Department, on or about February 22, 2009, Petitioner submitted a supplemental *pro se* brief in support of his direct appeal and added the following claims:

(2)      the appellate waiver that Petitioner signed when he entered his guilty plea

was invalid because there was no formal plea agreement, <u>see</u> Ciganek Aff.,
Ex. E at 5–8;

(3)    the trial court erred in denying Petitioner's motion to suppress because the
testimony supplied by the prosecution witness at the suppression hearing
was not credible, <u>see</u> <u>id.</u> at 9–14;

(4)    the search in which the troopers engaged exceeded the scope permitted by
the Fourth Amendment, <u>see</u> <u>id.</u> at 15–22;

(5)    the seizure of the plastic bag from inside Petitioner's pants violated
Petitioner's Fourth Amendment rights, <u>see</u> <u>id.</u> at 23–24.

On or about December 16, 2009, after receiving further leave from the Second Department,

Petitioner submitted another supplemental *pro se* brief in which he claimed that:

(6)    the trial court misrepresented the immigration consequences of Petitioner's
guilty plea and thereby rendered his plea involuntary and unintelligent, <u>see</u>
Ciganek Aff., Ex. F at 3–8;

(7)    trial counsel's failure to object to the trial court's misrepresentation of the
immigration consequences of Petitioner's guilty plea constituted
ineffective assistance of counsel, <u>see</u> <u>id.</u> at 8–10.

Respondent submitted a second opposition brief on or about June 15, 2010, addressing each of

Petitioner's new direct appeal claims.  <u>See</u> Ciganek Aff., Ex. G.  With regard to Petitioner's

ineffective assistance of counsel claim, Respondent argued that (1) "the record is clear that

[Petitioner] was advised [by the trial court] that his plea carried potential immigration

consequences," (2) Petitioner failed to preserve this claim by "fail[ing] to move to withdraw the

plea or vacate the judgment of conviction," (3) Petitioner "chose[] an improper vehicle with

which to press this claim," since "[c]laims of ineffective assistance must ordinarily be resolved

by way of a motion pursuant to [New York Criminal Procedure Law] § 440.10(1)(a), through

which a record may be made of the considerations underlying counsel's tactics and actions," and

(4) Petitioner's claim of ineffective assistance fails on the merits.  <u>Id.</u> at 22–27.

On October 26, 2010, the Second Department affirmed Petitioner's conviction.  <u>See</u>

7

Ciganek Aff., Ex. V.[7]  Although the Second Department agreed with Petitioner that the appellate waiver was invalid in the absence of any "promise, plea agreement, reduced charge, or any other bargain or consideration," id. at 1, and therefore considered each of Petitioner's direct appeal claims, it denied each of these claims on the merits. Id. at 2–3.  With regard to Petitioner's ineffective assistance claim, the Second Department noted that Petitioner "argues that his plea of guilty made deportation a virtual certainty, that the County Court should have informed him of that likely outcome, that its misrepresentation of the likelihood of deportation constituted reversible error, and that his attorney's failure to object to the . . . alleged misrepresentation constituted ineffective assistance of counsel." Id. at 2.  The Second Department "reject[ed] these contentions" and concluded that the trial court's statements regarding the potential immigration consequences of pleading guilty served to put Petitioner on notice of these consequences and thereby give Petitioner an opportunity to pursue any potential concerns with his attorney or an immigration expert. Id. at 2–3 (citing, among other authorities, Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473 (2010)).  The Second Department further found that, "[i]nsofar as we are able to review the defendant's remaining claims of ineffective assistance of counsel, [Petitioner's] counsel provided meaningful representation." Id. at 3.  On or about November 14, 2010, Petitioner moved for reargument before the Second Department and also moved for a writ of *error coram nobis*, claiming ineffective assistance of appellate counsel. See id., Ex. U.

On or about November 16, 2010, Petitioner's appellate counsel submitted a letter requesting leave to appeal to the New York Court of Appeals, enclosing copies of the Second

---

[7] While Respondent has included the Appellate Division's October 26, 2010 decision as Exhibit T to the Ciganek Affirmation, the Court notes that the copy of the decision set forth in Exhibit T is missing a page. The Court, therefore, references the copy of the decision that was attached to Petitioner's request for leave to appeal, as set forth in Exhibit V.

Department's decision, as well as copies of the various briefs that had been submitted on direct appeal. See id., Ex. V. On or about November 17, 2010, Petitioner submitted a letter to the Court of Appeals seeking to withdraw the application that had been submitted by his appellate counsel. See id., Ex. W. On or about December 2, 2010, Petitioner, proceeding *pro se*, submitted a request for leave to appeal to the Court of Appeals. See id., Ex. X. In this request, Petitioner explicitly argued that his "ineffective assistance of counsel claim should have been granted and the conviction overturned" because Petitioner's "trial counsel was ineffective for failing to object when incorrect immigration advice was given by the trial court at the plea hearing." Id. at 2. On March 28, 2011, the Court of Appeals denied Petitioner's request for leave to appeal. See Ciganek Aff., Ex. DD.

The Second Department denied Petitioner's motion for reargument on January 10, 2011, and Petitioner requested leave to appeal this decision on February 9, 2011. See Ciganek Aff., Ex. CC. The Court of Appeals denied this request on March 29, 2011. See id., Ex. EE. The Second Department, however, granted Petitioner's application for a writ of *error coram nobis* on May 10, 2011 on the ground that Petitioner's appellate counsel had been "ineffective in failing to raise the issue that [Petitioner's] waiver of his right to appeal was not valid" and "in failing to evaluate whether there were any nonfrivolous issues which could be raised on appeal." Id., Ex. FF at 2. The court vacated its October 26, 2010 decision on this basis, assigned Petitioner new appellate counsel, and ordered that "assigned counsel shall serve and file a brief expeditiously." Id. at 1–2.

On or about August 30, 2011, Petitioner's assigned counsel submitted a direct appeal brief on Petitioner's behalf claiming only that the trial court erred in denying Petitioner's motion to suppress because the troopers' search and seizure had violated Petitioner's Fourth Amendment

9

rights.[8]  See Ciganek Aff., Ex. GG at 11–17.  Petitioner's ineffective assistance of counsel claim

was not raised.  See id.  The Second Department concluded that the trial court had "properly

denied that branch of [Petitioner's] omnibus motion which was to suppress physical evidence"

and affirmed Petitioner's conviction on December 13, 2011.  People v. Contant, 935 N.Y.S.2d

35, 36 (App. Div. 2011).  Petitioner, proceeding *pro se*, requested leave to appeal on or about

January 12, 2012 and specifically asked the Court of Appeals to "review the search and seizure

issues raised in his appellate brief."[9]  See Ciganek Aff., Ex. JJ.  On March 30, 2012, the Court of

Appeals denied Petitioner's request for leave to appeal the Second Department's December 13,

2011 decision.  See id., Ex. LL.  Petitioner's conviction became final on June 28, 2012.[10]

## G.      The State Court Collateral Proceedings

While his initial direct appeal was pending, on or about August 25, 2009, Petitioner,

proceeding *pro se*, moved the trial court to vacate his judgment of conviction pursuant to New

---

[8] Counsel also argued that Petitioner had not waived his appellate rights and should not
be precluded from rearguing the Fourth Amendment issues because the arguments that he had
presented in his *pro se* supplemental briefs during his initial direct appeal had not had the
advantage of having been drafted by counsel.  See id. at 11–13.

[9] The Court notes that, on or about January 12, 2012, Petitioner, proceeding *pro se*, also
moved the Second Department for reconsideration and applied for a writ of *error coram nobis* on
the ground that appellate counsel was ineffective for failing to sufficiently argue certain aspects
of Petitioner's Fourth Amendment claim.  See id., Ex. MM.  As indicated by Respondent in a
letter to the Court dated October 1, 2012, the Second Department denied Petitioner's motions for
reconsideration and for a writ of *error coram nobis* on September 26, 2012.

[10] A judgment of conviction becomes final when the time to file a petition for a writ of
*certiorari* to the United States Supreme Court has expired, or ninety days after the New York
Court of Appeals denies leave to appeal on direct review.  See 28 U.S.C. § 2101(d); Sup. Ct. R.
13(1); Sup. Ct. R. 30(1); see also, e.g., Brown v. Greiner, 409 F.3d 523, 534 n.3 (2d Cir. 2005).

York Criminal Procedure Law § 440.10[11] on the ground that it was obtained in violation of

Petitioner's Sixth Amendment right to the effective assistance of counsel.[12]  See Ciganek Aff.,

Ex. H.  Petitioner claimed that, "moments before [he] entered a guilty plea . . . , [his] trial

attorney . . . told [him] that [his] background; being married to a United States Citizen, no prior

criminal history, being convicted of a non-violent crime, were all factors that the immigration

court would consider" and that Petitioner "'*might not be deportable*.'"  Id. at 2.  Petitioner argued

that "[t]hose statements . . . were an affirmative misrepresentation by [trial counsel] of the

collateral consequences of [Petitioner's] guilty plea."  Id. at 2.  Petitioner argued that his trial

counsel "was also ineffective in his assistance when he neglected to object when the trial court

falsely / incorrectly stated" that Petitioner "'*may be subject to deportation*.'"  Id. at 3.  In

opposition, Respondent argued that Petitioner had raised the same arguments in his pending

direct appeal,[13] that sufficient facts appeared on the record for the ineffective assistance claim to

be reviewed on direct appeal, and that this motion therefore should be denied pursuant to New

York Criminal Procedure Law § 440.10(2)(b).[14]  See Ciganek Aff., Ex. I at 5–6.  Alternatively,

———————————————

[11] "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ."  N.Y. Crim. Proc. Law § 440.10(1).

[12] Petitioner also claimed that the "trial judge used fraud / false statements ('misrepresentation') to secure [Petitioner's] judgment of conviction."  Ciganek Aff., Ex. H at 1.

[13] The Court notes that Respondent's opposition to Petitioner's first § 440.10 motion, as well as the trial court's decision on this motion, actually pre-date Petitioner's submission of his second supplemental *pro se* brief in which Petitioner first raised a claim for ineffective assistance on direct appeal.  In its opposition to the § 440.10 motion, Respondent noted that the "Appellate Division ha[d] granted [Petitioner] permission to file" a supplemental brief in which he "raise[d] essentially the same claims," though Petitioner apparently had not yet filed that brief with the Second Department.  Ciganek Aff., Ex. I at 5–6.

[14] "[T]he court must deny a motion to vacate a judgment when . . . [t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record

Respondent argued that Petitioner's claims were without merit. See id. at 7–13. On October 13, 2009, the trial court concluded that Petitioner's claims involved "matters of record" and that Petitioner "ha[d] raised these very same issues on his direct appeal" such that his "motion must be denied" pursuant to § 440.10(2)(b). See Ciganek Aff., Ex. J at 2 (unpaginated). The trial court went on to note that, "[e]ven reaching the merits of [Petitioner's] motion, it would nonetheless be denied" under the standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Id. at 2–4. On or about October 23, 2009, Petitioner requested permission to appeal the trial court's denial of his motion with the Second Department. See Ciganek Aff., Ex. L. The Second Department denied Petitioner's request on May 13, 2010. See id., Ex. N.

While Petitioner's initial direct appeal was still pending, and following the Supreme Court's decision in Padilla, 559 U.S., 130 S. Ct., on or about May 16, 2010, Petitioner, proceeding pro se, again moved the trial court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. See Ciganek Aff., Ex. O. Petitioner raised the same arguments that he had raised in his first collateral motion and urged the trial court to "consider [his] current 440.10 motion carefully" because, in Padilla, "the U.S. Supreme Court ha[d] basically agreed with the position that [he had] maintained even before [that] decision." Id. at 1 (unpaginated). Petitioner argued that, since Petitioner's previous § 440.10 motion was denied, "the law ha[d] changed regarding the issue(s) presented" and cited the Supreme Court's holding in Padilla. Id. at 5. Respondent opposed this motion. See id., Ex. P. On July 20, 2010,

---

with respect to the ground or issue raised upon the motion to permit adequate review thereof upon . . . appeal." N.Y. Crim. Proc. Law § 440.10(2)(b).

the trial court denied Petitioner's motion, again on the ground that he had raised the "exact same grounds" on his direct appeal, which still was pending.  See id., Ex. Q at 2 (unpaginated) (citing N.Y. Crim. Proc. Law § 440.10(2)(b)).  The trial court again noted that, even if it did reach the merits of Petitioner's claim, "the motion would nonetheless be denied" because Petitioner's claim did not satisfy the Strickland standard, even as it had been applied by the Supreme Court in Padilla.  Id. at 2–4.  On or about August 16, 2010, Petitioner requested leave to appeal the trial court's decision.  See id., Ex. R; see also id., Ex. K (Petitioner's supplemental request for leave to appeal, dated September 9, 2010).  In this request, Petitioner argued that the trial court erred because, among other reasons, "the instant grounds of ineffective assistance of counsel could not be raised on direct appeal because they deal with matters, discussions, and lack of discussions that occurred or did not occur; off the trial record."  Id., Ex. R at 2.  Respondent opposed Petitioner's request.  See id., Ex. S.  The Second Department denied Petitioner's request on January 18, 2011.  See id., Ex. AA.

## H.    The *Habeas Corpus* Proceedings

On March 5, 2010,[15] Petitioner, proceeding *pro se*, filed a petition seeking a writ of *habeas corpus*.  See Pet.  To his initial petition, Petitioner attached the supplemental *pro se* briefs that he had submitted to the Second Department on his direct appeal and thereby raised the following claims:

(1)    Petitioner's appellate waiver was invalid;

---

[15] The petition is dated March 5, 2010, was stamped received by the *Pro Se* Office on March 11, 2010, and was stamped filed by the Clerk's Office on April 26, 2010.  See Dkt. No. 1.  The "prison mailbox rule" applies to *habeas* petitions such that petitions are deemed filed on the date that the petitioner "delivers the [petition] to prison officials" for mailing.  See Noble v. Kelly, 246 F.3d 93, 97–98 (2d Cir. 2001).

13

    (2)      the testimony provided by the prosecution's witness at Petitioner's suppression hearing was not credible;

    (3)      the search conducted by the state troopers was unlawful;

    (4)      the seizure of the clear plastic bag from Petitioner's pants was unlawful;

    (5)      the trial court misrepresented the immigration consequences of Petitioner's guilty plea and thereby rendered his plea involuntary and unintelligent;

    (6)      Petitioner's trial counsel was ineffective for failing to object to the trial court's misleading statement regarding the immigration consequences of his guilty plea.

See Pet.

As noted above, even the Second Department's initial decision on Petitioner's direct appeal was not issued until October 26, 2010. Accordingly, this petition was filed long before Petitioner's conviction became final, and Respondent does not dispute that the petition was timely filed within the applicable statute of limitations. See 28 U.S.C. § 2244(d) (setting forth limitation period for *habeas* petitions).

As discussed by the Court in a previous order, see Dkt. No. 19 at 3, 6–7, Petitioner's sentence expired on or around March 10, 2010, when his two-year period of post-release supervision concluded. Respondent does not dispute that, although Petitioner was no longer serving the prison term portion of his sentence and, indeed, was housed in an immigration detention facility at the time that he filed his petition, he remained "in custody" for purposes of establishing jurisdiction over his *habeas* petition until his sentence—including the two-year period of post-release supervision—expired. Although "immigration detention is not 'custody' for the purposes of establishing jurisdiction to consider habeas petitions challenging a state court conviction pursuant to 28 U.S.C. § 2254," Ogunwomoju v. United States, 512 F.3d 69, 70 (2d Cir. 2008), "[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody,'" Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006).

14

On June 20, 2010, following an order by the Court that he do so, see Dkt. No. 3,

Petitioner filed an amended petition alleging additional facts regarding the issue of exhaustion.

See Am. Pet.  To his amended petition, Petitioner again attached his supplemental *pro se* direct

appeal briefs and thereby raised the same claims from those briefs that he had raised initially.

See id.  In addition, Petitioner attached copies of the motions to vacate that he had filed in the

trial court on August 25, 2009 and May 16, 2010 and thereby incorporated his additional factual

argument that, prior to the entry of his guilty plea, Petitioner's trial counsel affirmatively

misadvised him that deportation was unlikely.  See id.

On or about June 20, 2010, Petitioner requested that the Court enter a stay of the *habeas*

proceedings to allow him to exhaust his as yet unexhausted claims.  See Dkt. No. 6.  Respondent

opposed Petitioner's request.  See Dkt. No. 16.  On December 13, 2010, the Court granted

Petitioner's request and entered a stay of the *habeas* proceedings.  See Dkt. No. 19.

On August 2, 2010, Petitioner filed an application for the Court to request *pro bono*

counsel, see Dkt. Nos. 8–9, which initially was denied by the Court, see Dkt. No. 14.  However,

following Petitioner's filing, on or about December 20, 2010, of a motion for preliminary

injunctive relief, see Dkt. No. 21, the Court reconsidered its prior decision and granted

Petitioner's application for counsel on January 10, 2011.  See Dkt. No. 22.  In this order, the

Court also denied Petitioner's motion for injunctive relief "on the ground that this Court lacks

authority to grant the relief requested while Petitioner's underlying claims remain unexhausted

in the state courts."  Id. at 1.  Petitioner filed objections to this order on or about February 3,

2011.  See Dkt. No. 23.

By letter dated July 22, 2011, Petitioner's counsel reported to the Court that Petitioner's

claims remained unexhausted due to pending state court proceedings and therefore requested that

the *habeas* proceedings continue to be stayed and that counsel be permitted to supplement

Petitioner's objections to the Court's January 10, 2011 order after exhaustion was complete.  See

Dkt. No. 28.  By letter dated January 20, 2012, Petitioner's counsel reported that Petitioner's

claims had been exhausted in the state courts, requested that the stay be lifted, and sought

permission to "re-file an amended habeas corpus petition . . . to clarify the issues before this

Court."  Dkt. No. 30.  The Court granted this request, and Petitioner's second amended petition

was filed on or about April 19, 2012.  See 2d Am. Pet.  On April 25, 2012, the Court formally

lifted the stay and ordered Respondent to answer within sixty days.  See Dkt. No. 33.

By letter dated July 6, 2012, Respondent notified the Court that Petitioner's second

application for a writ of *error coram nobis* was still pending in state court and requested that the

Court again stay the *habeas* proceedings.  See Dkt. No. 35.  Petitioner thereafter represented that

he "wishe[d] to proceed with this habeas corpus petition, without seeking a stay," and "agree[d]

to forego any future amendment to this petition in connection with and resulting from the

outcome of" his pending state motion.[16]  Dkt. No. 36.  Respondent's opposition papers were filed

on August 3, 2012.[17]  See Ciganek Aff.; Resp't's Mem.  Petitioner's reply memorandum was

filed on October 5, 2012.  See Pet'r's Reply Mem.  By letter dated October 9, 2012, Petitioner

presented additional argument in support of his petition.  See Dkt. No. 42.

In his second amended petition, Petitioner raises only one claim: "Petitioner was denied

---

[16] By letter dated October 1, 2012, Respondent advised the Court that Petitioner's state
court motion was no longer pending.

[17] Most of the exhibits to the Ciganek Affirmation, however, were not electronically filed
until April 1, 2013 and April 4, 2013.  See Dkt. Nos. 44, 45.

effective assistance of counsel when his attorney failed to inform him of the immigration consequences of his plea," and, therefore, "Petitioner is entitled to a vacation of the guilty plea under Padilla v. Kentucky." 2d Am. Pet. at 4 (typeface altered from original); see also id. at 4–11; Pet'r's Reply Mem. at 2–8. Petitioner's ineffective assistance of counsel claim is based on his contention that "prior counsel never advised him that he would be subject to mandatory deportation," 2d Am. Pet. at 7, as shown at least in part by counsel's failure to object when the trial court stated that Petitioner "may" face immigration consequences. See id. at 10–11 (noting that trial "counsel had an obligation to inform [Petitioner] of this certainty, and at a minimum, object to the Court's instruction"); Pet'r's Reply Mem. at 4 (arguing that "it was obvious from the exchange between the Petitioner and the Court that the Petitioner was unaware that the result of his plea would be mandatory deportation, yet his attorney remained silent" and that "[t]he fact that Petitioner's attorney did not object or comment as his client was being told by the Court that his plea *may* have immigration consequences, when the plea would quite certainly cause Petitioner to be deported, goes to satisfying the first prong of *Strickland*"). Petitioner further argues that he was prejudiced by counsel's deficient conduct because "it would have been rational to reject the plea had the Petitioner been aware of the consequences – mandatory removal." 2d Am. Pet. at 9. Respondent opposes Petitioner's claim on the merits. See Resp't's Mem. at 8–15.

### III. **DISCUSSION**

**A.    Applicable Law on *Habeas Corpus* Review**

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claims in

accordance with § 2254(d). The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

      1.     *Timeliness Requirement*

      A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting

points for the limitations period and specifies that the latest of these shall apply. See id. §

2244(d)(1). Under the statute, the limitations period is tolled only during the pendency of a

properly filed application for State post-conviction relief, or other collateral review, with respect

to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as

follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State court.
> The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of
> > direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by
> > State action in violation of the Constitution or laws of the United States is
> > removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially
> > recognized by the Supreme Court, if the right has been newly recognized

by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation marks omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Id.

2.    *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. See Rose v. Lundy, 455 U.S. 509, 518–19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (internal citation omitted) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005). A claim may be "fairly presented" to the state courts, therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

(a) [R]eliance on pertinent federal cases employing constitutional analysis, (b)

20

> reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).  A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation marks omitted).  "In such a case, a petitioner no longer has remedies available in the courts of the State within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (internal quotation marks omitted).  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.  See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless."  Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

3.     *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it.  Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law.  Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Coleman, 501 U.S. at 740).  A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423–24 (1991)).

4.     *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims.  28 U.S.C. § 2254(d)(1)–(2).  This statute "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.  Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

§ 2254(d)(1)–(2).  The deferential AEDPA standard of review will be triggered when the state

court has both adjudicated the federal claim "on the merits" and reduced its disposition to

judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  Where the state court "did not

reach the merits" of the federal claim, however, "federal habeas review is not subject to the

deferential standard that applies under AEDPA . . . .  Instead, the claim is reviewed *de novo*."

Cone v. Bell, 556 U.S. 449, 472 (2009); see § 2254(d).

    Under the first prong of the AEDPA deferential standard, a state court decision is

contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme

Court] has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision

involves an "unreasonable application" of Supreme Court precedent if the state court "identifies

the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to

the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal

principle from [Supreme Court] precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

    Under the second prong of AEDPA, the factual findings of state courts are presumed to

be correct.  28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).

The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

**B.**     <u>**Analysis of Petitioner's Claim**</u>

1.     *Procedural Bar*

Although Respondent opposes Petitioner's claim only on the merits, and apparently concedes that Petitioner's claim is not defaulted, the Court considers the issue *sua sponte* given the complex procedural history of this case.  See Mitchell v. Miller, No. 08 Civ. 8495 (NRB), 2009 WL 2924310, at *5 n.12 (S.D.N.Y. Sept. 10, 2009) (noting that "[t]he Second Circuit has held that a district court should raise a procedural default issue *sua sponte* unless one of four exceptions applies to the circumstances of the habeas petition," none of which apply in the present case) (quoting Washington v. James, 996 F.2d 1442, 1451 (2d Cir. 1993)).

As discussed above, Petitioner initially presented a claim for ineffective assistance of counsel in his *pro se* supplemental direct appeal brief to the Second Department and based this claim solely on his trial counsel's failure to object to the trial court's allegedly misleading statements regarding the potential immigration consequences that Petitioner faced following entry of his guilty plea.  While his direct appeal was pending, Petitioner also raised his ineffective assistance claim—premised not only on his trial counsel's failure to object to the court's statement regarding immigration consequences, but also on his trial counsel's allegedly having misadvised him regarding immigration consequences prior to the commencement of the on-the-record plea proceedings—in two collateral motions in the trial court, pursuant to New York Criminal Procedure Law § 440.10.  As discussed above, the trial court denied each of these motions on the grounds that Petitioner had raised this ineffective assistance claim on direct appeal, the direct appeal was still pending, and sufficient facts appeared on the record for the claim to be considered on direct appeal.  The Second Department denied Petitioner's requests for

24

leave to appeal each of these trial court decisions.

Following the decisions on Petitioner's § 440.10 motions, the Second Department considered and denied Petitioner's direct appeal ineffective assistance claim on the merits on October 26, 2010.  That decision, however, ultimately was vacated after the Second Department granted Petitioner's subsequent application for a writ of *error coram nobis*.  Despite the trial court's prior determinations that Petitioner's ineffective assistance claim should be reviewed on direct appeal rather than via collateral motion, Petitioner, proceeding through newly assigned appellate counsel, failed to present his ineffective assistance claim on his subsequent direct appeal and therefore ultimately failed to present this claim to the state courts on direct review. Despite abandoning this claim for purposes of his direct appeal, Petitioner also did not raise his ineffective assistance of counsel claim through a subsequent collateral motion.  Consequently, the last-reasoned state court decision to consider Petitioner's ineffective assistance of counsel claim is the trial court's July 20, 2010 decision denying Petitioner's § 440.10 motion.

As noted above, the trial court's denial of Petitioner's § 440.10 motion rested on a state procedural rule, specifically New York Criminal Procedure Law § 440.10(2)(b).  "[W]hen a state court judgment rests on independent and adequate state law grounds, including a petitioner's failure to meet state procedural requirements, a federal court may not consider the petitioner's substantive claims."  Bonilla v. Portuondo, No. 00 Civ. 2369 (JGK)(JCF), 2004 WL 350694, at *9 (S.D.N.Y. Feb. 26, 2004) (Report and Recommendation), adopted by 2004 WL 1782174 (S.D.N.Y. Aug. 9, 2004).  A state court's "express reliance" on a state procedural rule "constitutes an 'independent' state law ground for that decision. . . . even when the state court addresses the merits in reaching an alternative holding."  Whitley v. Ercole, 642 F.3d 278, 286,

286 n.8 (2d Cir. 2011). "A procedural bar is 'adequate' if it is based on a rule that is 'firmly

established and regularly followed by the state in question.'" Pearson v. Greiner, No. 02 Civ.

10244 (RJH)(GWG), 03 Civ. 1477 (RJH)(GWG), 2004 WL 2453929, at *9 (S.D.N.Y. Nov. 3,

2004) (quoting Garcia, 188 F.3d at 77) (Report and Recommendation).

Although the trial court addressed the merits of Petitioner's ineffective assistance claim in

the alternative, its denial of Petitioner's motion was expressly based on the independent state law

ground of New York Criminal Procedure Law § 440.10(2)(b). See Ciganek Aff., Ex. Q.  In order

to determine whether the state procedural ground is adequate, the Court considers the following

"guideposts" that have been set forth by the Second Circuit:

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule would serve a
> legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee v. Kemna, 534 U.S. 362,

381–85 (2002)).  "[T]he adequacy of a state procedural bar is determined with reference to the

'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate

state interest.'" Id. (quoting Lee, 534 U.S. at 387); see also Johnson v. Sabourin, No. 03 Civ.

0791 (KMW)(RLE), 2005 WL 2663039, at *3 (S.D.N.Y. Oct. 14, 2005) ("If the 'state procedural

rule [is] employed infrequently, unexpectedly, or freakishly . . . [it] is not an . . . adequate state

ground.'") (quoting McLaurin v. Kelly, No. 94-CV-1560 (RSP/GJD), 1998 WL 146282, at *3

(N.D.N.Y. Mar. 27, 1998)) (Report and Recommendation).

In the present case, it is apparent that the trial court relied on § 440.10(2)(b) in denying

Petitioner's ineffective assistance claim, and Petitioner was on notice that the trial court's decision rested on this procedural ground, yet failed to make efforts to comply with this rule by ultimately raising his ineffective assistance claim on direct appeal or in a subsequent § 440.10 motion.  Accordingly, the first and third guideposts arguably favor a finding of adequacy.  See Johnson, 2005 WL 2663039, at *4, *5–6 (finding that state court's reliance on § 440.10(2)(b) was adequate, in part, because trial court had cited this rule as basis for its decision; petitioner's ineffective assistance claim could have been "heard on the merits" if petitioner had raised it on direct appeal; and, despite potential "'Catch-22'" posed by appellate counsel's belief that this claim did not appear on the record and thus would not have been reviewed on direct appeal, petitioner "should have pursued both avenues of relief and, on appeal, focused his arguments on facts within the record").

Having considered the second guidepost, however, the Court concludes that the trial court's reliance on § 440.10(2)(b) does not constitute an adequate state law ground because New York state case law suggests that application of this procedural bar was not "demanded in the specific circumstances presented."  Cotto, 331 F.3d at 240.  The New York Court of Appeals has held that, "[g]enerally, the ineffectiveness of counsel is not demonstrable on the main record," and, therefore, "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10."  People v. Brown, 45 N.Y.2d 852, 853–54 (1978); cf. Bonilla, 2004 WL 350694, at *10 (noting that "a review of New York caselaw demonstrates that CPL § 440.10(2)(c) is not regularly followed in the context of ineffectiveness [sic] assistance claims").  While some ineffective assistance claims, including

27

claims based solely on failures to object, may appear on the record and therefore be more properly considered on direct appeal, see, e.g., Sweet v. Bennett, 353 F.3d 135, 139–40 (2d Cir. 2003), "mixed claim[s] of ineffective assistance that depend[], in part, upon matters that do not appear on the record" are not "procedurally barred" by New York Criminal Procedure Law § 440.10(2)(b), and the "440.10 proceeding is the appropriate forum for reviewing [such claims] in [their] entirety." People v. Maxwell, 933 N.Y.S.2d 386, 388 (App. Div. 2011); accord People v. Freeman, 940 N.Y.S.2d 314, 315 (App. Div. 2012) (finding that, because defendant's "mixed claim" of ineffective assistance of counsel "cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the ineffective assistance claim in its entirety") (internal quotation marks omitted).

Here, Petitioner presented a mixed ineffective assistance claim in his § 440.10 motion because his claim rested partly on his trial counsel's failure to object during the plea colloquy—which does appear on the record—and partly on his trial counsel's alleged failure to properly inform Petitioner about the immigration consequences before he entered his guilty plea—which does not appear on the record. Accordingly, "compliance with" New York Criminal Procedural Law § 440.10(2)(b) was not "demanded in the specific circumstances presented," Cotto, 331 F.3d at 240, because "sufficient facts" did not "appear on the record . . . to permit adequate review" upon direct appeal, N.Y. Crim. Proc. Law § 440.10(2)(b). See People v. Gonzalez, 957 N.Y.S.2d 265, No. 3258-1996, 2012 WL 2914164, at *2–3 (Sup. Ct. Bronx Cnty. 2012) (table opinion) (finding that "the advice that defendant may or may not have received" from counsel regarding immigration consequences of guilty plea "would not have explicitly appeared on the record, separate and apart from whatever information this court

28

imparted to him during the allocution" and, therefore, ineffective assistance claim was "not

procedurally barred" under New York Criminal Procedure Law § 440.10(2)(c)); cf. People v.

Harris, 491 N.Y.S.2d 678, 687 (App. Div. 1985) (noting that "instant claim of ineffective

assistance, predicated entirely, as it is, upon alleged faulty legal advice given by counsel, appears

to be one preeminently necessitating CPL article 440 review" and finding, therefore, that

"procedural bar of CPL 440.10(2)(c) should not have been applied to [this] claim"). The trial

court's reliance on this rule, therefore, is not an adequate procedural bar. Cf. Pearson, 2004 WL

2453929, at *10 n.3 (noting that, "where the ineffective assistance claim is not record-based,

federal habeas courts have held that the rule of CPL § 440.10(2)(c) is not 'adequate'"); Bonilla,

2004 WL 350694, at *10 (finding that, because "New York courts have . . . held that a claim

challenging an attorney's failure to call witnesses does not sufficiently appear on the record so as

to require dismissal of that claim if raised for the first time on a § 440.10 motion, . . . . it is

appropriate to review the merits of the petitioner's claim").

The Court therefore will review the trial court's alternative merits holding pursuant to the

AEDPA deferential standard.[18]  See Tatum v. Lempke, 481 F. App'x 659, 662 n.4 (2d Cir. 2012)

(noting that, where state court "found . . . claim to be procedurally barred but also addressed its

merits," federal *habeas* court "must afford AEDPA deference" to "state court's alternative

holding on the merits," rather than review petitioner's claim *de novo*).

2.  *Merits*

Petitioner argues that his guilty plea rendered him statutorily subject to mandatory

---

[18] The Court notes that Petitioner fully exhausted this claim by presenting it in federal
constitutional terms to the trial court, see Ciganek Aff., Ex. O, and to the Second Department,
see id., Ex. R.  See Baldwin, 541 U.S. at 29.

deportation; that, under <u>Padilla</u>, his trial counsel was obligated to inform him of this clear immigration consequence but failed to do so and failed even to object to the trial court's allegedly misleading statement on the issue; and that his trial counsel's conduct, therefore, was constitutionally deficient. <u>See</u> 2d Am. Pet. at 6–7, 10–11; <u>see also</u> Pet'r's Reply Mem. at 4–5. Petitioner claims that he has established prejudice because "it would have been rational to reject the plea had the Petitioner been aware of the consequences – mandatory removal." 2d Am. Pet. at 9; <u>see also</u> Pet'r's Reply Mem. at 5–7. Specifically, Petitioner argues that the Court "would be hard pressed to hold that a non-citizen facing mandatory deportation would not find it rational to reject a plea bargain and take his chances at trial." Pet'r's Reply Mem. at 5. According to Petitioner, because the evidence against him was "uncertain at best," it would have been rational for him to proceed to trial rather than face mandatory deportation. <u>Id.</u> at 6. Petitioner further contends that, "[b]y entering an open plea, Petitioner was subject to the same sentence as if he had taken the matter to trial, which bolsters his argument that there is more than a reasonable probability that he would have taken the matter to trial." Dkt. No. 42.

Respondent argues in opposition that the petition should be denied because "Rockland County Court's determination that petitioner was not denied the effective assistance of counsel was neither contrary to, nor involved an unreasonable application of, clearly established federal law as established by the United States Supreme Court in <u>Strickland</u> and <u>Padilla</u>." Resp't's Mem. at 2 (internal citations omitted). Specifically, Respondent argues that "whether counsel failed to inform petitioner of the potential immigration consequences of his guilty plea is immaterial because the judge apprised [him] of the issue in open court" and that, given the "strength of the evidence and the extremely favorable plea bargain, petitioner failed to establish

30

prejudice." Id. at 10–11.

The Counsel Clause of the Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has construed this clause to afford criminal defendants the right to the *effective* assistance of counsel. See McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). A petitioner's ineffective assistance of counsel claim will succeed on the merits if the petitioner proves (1) that "counsel's representation fell below an objective standard of reasonableness," as measured under "prevailing professional norms," Strickland, 466 U.S. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. A *habeas* petitioner bears the burden of proving both prongs of the Strickland test. See Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005). He therefore must prove that his attorney's actions were objectively unreasonable and that he was prejudiced to the extent that there exists a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 687–96. Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. Moreover, as the Supreme Court has noted, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult" given that "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal citations omitted) (quoting Strickland, 466 U.S. at 689; Lindh v. Murphy, 521 U.S. 320,

31

333 n.7 (1997); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009)).

      To show that an attorney's conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. Additionally, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> In the guilty plea context, the Supreme Court recently held that the Court's "longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand" that "counsel must inform her [noncitizen] client whether his plea carries a risk of deportation."[19] <u>Padilla</u>, 130 S. Ct. at 1486. Where the "terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence" for a petitioner's conviction such that counsel is able to "easily determine[] that [a noncitizen client's] plea would make him eligible for deportation," counsel's "duty to give correct advice" regarding her client's "deportation [being] presumptively mandatory" is "clear." <u>Id.</u> at 1483; <u>see also</u> <u>id.</u> (noting that, "[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges *may* carry a risk of

---

      [19] While Petitioner and Respondent each have raised arguments regarding whether <u>Padilla</u> applies retroactively, <u>see</u> 2d Am. Pet. at 9–10, Resp't's Mem. at 5–6, the Court need not consider these arguments both because this issue was recently resolved by the Supreme Court in the negative in <u>Chaidez v. United States</u>, 133 S. Ct. 1103, 1105 (2013), and because <u>Padilla</u> was decided on March 31, 2010, which was more than two years before Petitioner's conviction became final on June 28, 2012, several months before the Appellate Division issued its decision on Petitioner's initial direct appeal on October 26, 2010, and several months before the trial court decided Petitioner's second § 440.10 motion—and issued the operative decision on Petitioner's ineffective assistance claim—on July 20, 2010.

adverse immigration consequences," but, "when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear") (emphasis added). "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly establishes the first prong of the Strickland analysis.'" Id. at 1484 (quoting Hill v. Lockhart, 474 U.S. 52, 62 (1985)).

The prejudice inquiry in the context of a challenge to a guilty plea asks whether "counsel's constitutionally ineffective performance affected the outcome of the plea process," which requires the petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Padilla, 130 S. Ct. at 1485 (noting that, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"). In some cases, the court's determination of whether it would have been "rational" for the petitioner "to insist on going to trial," Roe v. Flores-Ortega, 528 U.S. 470, 485 (2000), may depend in part on "predictions of the outcome at a possible trial," Hill, 474 U.S. at 59–60. "[W]here necessary," such predictions "should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" Id. at 60 (quoting Strickland, 466 U.S. at 695).

In short, the prejudice inquiry in the guilty plea context "requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to enter a plea." Francis v. United States, No. 12 Civ. 1362 (AJN), 2013 WL 673868, at *3 (S.D.N.Y. Feb. 25, 2013). "In determining whether a petitioner has made the requisite showing, '[c]onclusory allegations that [a petitioner] would

have insisted on proceeding to trial are generally insufficient to establish actual prejudice under Strickland.'" Id. (quoting Scott v. Superintendent, No. 03-CV-6383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006)). Rather, the "Second Circuit generally 'requires some objective evidence other than defendant's assertions to establish prejudice.'" Id. (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003)). As the Supreme Court has noted, "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy Strickland's prejudice prong." Padilla, 130 S. Ct. at 1486 n.12.

When considering the merits of Petitioner's ineffective assistance claim, the trial court concluded that Petitioner's claim did not satisfy the Strickland standard, even as interpreted by the Supreme Court in Padilla. See Ciganek Aff., Ex. Q at 2–4. Specifically, the court found that Petitioner had "not satisf[ied] the first prong of the Strickland test" because he had "not established that deportation was automatic or that the result was sufficiently clear such that his attorney had an affirmative duty to give definitive advice regarding deportation" pursuant to Padilla and because he "was properly advised by the Court during his plea colloquy that the conviction may have immigration consequences." Id. at 3. The trial court further found that Petitioner had "not satisf[ied] the second prong of the Strickland test by demonstrating prejudice" since he "merely allege[d] that he would have gone to trial if he received adequate advise [sic]" and had "not established any likelihood or even a reasonable possibility that he would have been acquitted following trial. . . . [g]iven the strength of the People's case . . . ." Id. at 4.

Even assuming that Petitioner's trial counsel engaged in conduct that was deficient under Padilla such that the trial court's conclusion that Petitioner failed to satisfy the first Strickland prong was contrary to, or reflected an unreasonable application of, clearly established federal

law,[20] Petitioner's claim nonetheless fails because he has not demonstrated prejudice. See Strickland, 466 U.S. at 697 (holding that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"). "To determine whether the decision to proceed to trial rather than plead guilty would have been rational, courts first look to the weight of the evidence against the petitioner." Francis, 2013 WL 673868, at *4; see also Boakye v. United States, No. 09 Civ. 8217 (RWS), 2010 WL 1645055, at *4 (S.D.N.Y. Apr. 22, 2010) (noting that "the Second Circuit has often rejected ineffectiveness claims by determining that, in view of the strength of the prosecution's case, the defendant is unable to establish prejudice"). Here, the prosecution's case included evidence that a clear plastic bag containing a white substance was recovered from Petitioner's pants following a police search, as well as a laboratory report confirming that the recovered substance indeed was cocaine and that it weighed in excess of one half-ounce, as required for conviction under New York Penal Law § 220.16(12). The strength of this evidence, as well as Petitioner's having acknowledged his guilt, weighs against a finding of prejudice. See Francis, 2013 WL 673868, at *4 ("[T]he evidence against [petitioner] was strong, he acknowledges his guilt, and it is more than reasonable to assume that he would have been found guilty and faced the same immigration consequences had he proceeded to trial.").

"In addition to the weight of the evidence" against the petitioner, "courts also look to the

---

[20] The Court acknowledges Respondent's argument that Petitioner has not submitted an affidavit from his trial counsel or any other evidence to corroborate his claim that his trial counsel "failed to advise petitioner that his plea could result in immigration consequences." Resp't Mem. at 12. The Court need not reach this argument or conduct an evidentiary hearing to decide this issue, however, because, as discussed below, even assuming that Petitioner's trial counsel engaged in the conduct alleged by Petitioner and that this conduct was legally deficient under Padilla, Petitioner's claim still fails because Petitioner has not established prejudice. See Francis, 2013 WL 673868, at *3 n.3.

consequences of the various legal options available to a petitioner, for example, whether the

petitioner benefited from pleading guilty and whether the petitioner could have succeeded

entirely or at least avoided the deportation consequences had he gone to trial." Id. at *5.  While

Petitioner argues that he received no benefit from pleading guilty, the record reflects that

Petitioner received a recommendation from the prosecution of only four years imprisonment

instead of a possible maximum term of nine years.  Moreover, Petitioner's guilty plea enabled

Petitioner and his attorney to seek (and obtain) leniency at sentencing based upon Petitioner's

full acceptance of responsibility—a factor which surely influenced the court's decision to

impose the one-year minimum sentence which was substantially *below* the prosecutor's

recommendation.[21]  Given the weight of the evidence described above, on the other hand,

Petitioner has not demonstrated a reasonable likelihood that he would have avoided the

deportation consequences had he proceeded to trial.  Thus, this second factor also weighs against

a finding of prejudice.

Finally, courts have recognized that a noncitizen defendant might be willing to forego the

potential benefits of pleading guilty and instead be willing to risk trial in the hope of avoiding

deportation given "familial ties and [other] bonds to the United States" and have considered this

possibility when "addressing the Strickland prejudice prong." Francis, 2013 WL 673868, at *5.

Here, however, Petitioner has offered no specific arguments regarding his ties to the United

---

[21]Although Petitioner's "open" plea did not trigger a quantifiable sentencing benefit, see
Francis, 2013 WL 673868, at *5 (petitioner who received acceptance of responsibility reduction
under Federal Sentencing Guidelines benefitted from his plea), Petitioner clearly benefitted from
the time-honored maxim that "a defendant's admission of responsibility . . . 'is often a
significant first step towards his rehabilitation and, for that reason, deserving of a possible
reward in the form of a lessened sentence[.]'" United States v. Parker, 903 F.2d 91, 105 (2d Cir.
1990) (quoting Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir. 1991)).

States and instead has argued simply that he would have gone to trial rather than face mandatory deportation.  Such a conclusory assertion, however, is insufficient to demonstrate prejudice.  <u>See</u> <u>Boakye</u>, 2010 WL 1645055, at *6 ("The conclusory claim in Petitioner's brief that he would have gone to trial but for counsel's alleged ineffectiveness, standing alone, does not establish prejudice under <u>Strickland</u>.").

<u>Strickland</u> requires that Petitioner show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  "That is, even if a petitioner can demonstrate extraordinary circumstances that would make a seemingly irrational choice to go to trial appear more reasonable, that petitioner still must demonstrate that going to trial could have resulted in a different outcome." <u>Francis</u>, 2013 WL 673868, at *6.  Given the considerations discussed above, the Court concludes that Petitioner likely "would have been subject to deportation proceedings even had his counsel informed him of the deportation consequences of pleading guilty," and, therefore, Petitioner has not established prejudice because he "is unable to show that the outcome in his case would have resulted in anything but his being deported." <u>Id.</u> at *6–7.  Accordingly, this Court is unable to conclude that the trial court's decision denying Petitioner's ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, and I respectfully recommend that the petition be denied on the merits.

## IV.  CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the petition should be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial

showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated: April 4, 2013
        White Plains, New York

                                      Respectfully submitted,

                                      Paul E. Davison
                                      United States Magistrate Judge

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Kenneth M. Karas, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.