UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____              │
│ DATE FILED:_____            │
└─────────────────────────────────┘
```

ISAN CONTANT,

                Petitioner,

-v-

WARDEN MARY SABOL, WARDEN CRAIG A.
LOWE, and THE STATE OF NEW YORK,

                Respondents.

Case No. 10-CV-3434 (KMK) (PED)

ORDER ADOPTING
REPORT & RECOMMENDATION

KENNETH M. KARAS, District Judge:

## I. Background

        After entering a guilty plea, Petitioner was convicted in state court on October 3, 2007, of one count of criminal possession of a controlled substance in the third degree. (*See* Report & Recommendation ("R&R") (Dkt. No. 46) at 1.) Petitioner was thereafter sentenced to imprisonment for a term of one year and to post-release supervision for two years. (*See id.*) Following Petitioner's conviction, the federal government commenced deportation proceedings against Petitioner pursuant to 8 U.S.C. § 1227(a)(2)(B)(i), (*see id.* at 6), which makes deportable "[a]ny·alien who at any time after admission [to the United States] has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance." 8 U.S.C. § 1227(a)(2)(B)(i). On September 10, 2010, Petitioner received a final order of removal, and on February 8, 2012, Petitioner was deported to Trinidad and Tobago. (*See* R&R at 6.)

Petitioner filed the instant Petition on April 19, 2012, seeking relief under 28 U.S.C. §
2254.[1] (*See* Dkt. No. 31. ("Pet.").)  The Petition was referred to Magistrate Judge Davison, who
issued a Report and Recommendation ("R&R") recommending that the Petition be denied.  (*See*
R&R at 37.)  Petitioner filed timely objections to the R&R, wherein he raises four challenges.
(*See* Pet'r's Objections to R&R ("Objs.") (Dkt. No. 47).)  After reviewing the R&R and
Petitioner's objections, the Court agrees with Magistrate Judge Davison that the Petition should
be denied, and it adopts his R&R to the extent it is consistent with this Opinion for the reasons
given below.

## II.  Discussion

The R&R thoroughly discussed the procedural and factual history of the Petition.  (*See*
R&R at 2–17.)  The Court thus finds no need to revisit that discussion here, but will instead refer
to the R&R's account where necessary.  Accordingly, the Court will proceed directly to the
merits of Petitioner's objections.

### A.  Legal Standard

#### 1.  Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion
"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the
magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of
Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and
recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and

---

[1] Petitioner originally filed a Petition on April 26, 2010, (*see* Dkt. No. 1), and an Amended
Petition on June 23, 2010, (*see* Dkt. No. 5).  Before the Court is Petitioner's properly filed
Second Amended Petition, (*see* Dkt. No. 31).

must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(2).

Where a party submits timely objections to a report and recommendation, as Petitioner has done here, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may adopt those portions of the . . . report [and recommendation] to which 'no specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

### 2.  Habeas Corpus

A petition for habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law."  28 U.S.C. § 2254(d)(1).  In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under

3

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a substantially higher threshold."). Instead, "[§] 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different from the state court's, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1411 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the California Supreme Court to conclude that [petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*—we . . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)), *cert. denied*, 133 S. Ct. 2338 (2013).

### 3. Ineffective Assistance of Counsel

Petitioner's sole claim for habeas relief is that he was denied the effective assistance of counsel guaranteed to him by the Sixth Amendment, as incorporated against the states through the Fourteenth Amendment. (*See* Pet. at 4.) The Court thus analyzes Petitioner's specific claims of ineffective assistance under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Chaidez v. United States*, 133 S. Ct. 1103, 1107–08 (2013) (noting that *Strickland*

4

"provides sufficient guidance for resolving virtually all claims of ineffective assistance, even though their particular circumstances will differ" (internal quotation marks omitted)). In *Strickland*, the Supreme Court held that a defendant claiming ineffective assistance of counsel must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694.

Under the first prong, the Court "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington*, 131 S. Ct. at 787 (internal quotation marks omitted). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 688). "In applying and defining this standard substantial deference must be accorded to counsel's judgment." *Premo v. Moore*, 131 S. Ct. 733, 742 (2011); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

Under the second prong, because "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial," Petitioner must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. "In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the [petitioner] will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). And he must specifically make this allegation in his petition. *Hill*, 474 U.S. at 60 (finding no prejudice where

5

"[p]etitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial"). "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Where, as here, a petitioner seeks habeas review of an ineffective-assistance-of-counsel claim under the test announced in *Strickland*, review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Harrington*, 131 S. Ct. at 788 ("The standards created by *Strickland* and [AEDPA] are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotation marks and citations omitted)). Petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 698–99. Thus, "[w]hen [AEDPA] applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788; *see also Gueits v. Kirkpatrick*, 612 F.3d 118, 125 (2d Cir. 2010) ("[O]ur review is not focused on the proper application of New York law. Our task is limited to assessing whether the Appellate Division unreasonably applied *Strickland* . . . , even assuming that the state courts erroneously applied state law."); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (when reviewing an ineffective-assistance claim in the context of a habeas petition, the court asks "only whether the [state court's] rejection of [the] claim amounted to an unreasonable application of the *Strickland* standard").

6

## B. Analysis

Petitioner specifically challenges a state-court decision denying his § 440.10 Motion to vacate his conviction, wherein the state court held that Petitioner failed to satisfy both the deficient performance and prejudice prongs under *Strickland*.[2]  (R&R at 34.)  In his R&R, Magistrate Judge Davison recommended denial of the Petition on the prejudice prong alone. (*See id.* at 34–35.)  Specifically, he found that "Petitioner likely 'would have been subject to deportation proceedings even had his counsel informed him of the deportation consequences of pleading guilty,' and, therefore, Petitioner has not established prejudice because he 'is unable to show that the outcome in his case would have resulted in anything but his being deported.'"  (*Id.* at 37 (quoting *Francis v. United States*, No. 12-CV-1362, 2013 WL 673868, at *6–7 (S.D.N.Y. Feb. 25, 2013).)  He also recommended that the Court decline to issue a Certificate of Appealability.  (*Id.* at 37–38.)  Petitioner objects to both recommendations.

### 1. Ineffective-Assistance Claim

In the context of the merits of his ineffective-assistance claim, Petitioner objects to the R&R on three grounds.  First, he argues that the R&R improperly evaluated the weight of the evidence against him and the fact that he entered a guilty plea in finding that Petitioner would not have proceeded to trial.  (Objs. at 3.)  Second, he objects to the R&R's finding that Petitioner received a benefit for pleading guilty.  (*Id.* at 2.)  Third, he argues that the R&R "disregard[s] the

_____

[2] As the R&R explains, Petitioner also filed a direct appeal and a different § 440.10 motion. (*See* R&R at 6–12.)  However, the Appellate Division's decision resolving the Petition's claim on direct appeal was vacated. (*See* R&R at 25.)  Moreover, Magistrate Judge Davison found that Petitioner's second § 440.10 Motion was "the last-reasoned state court decision to consider Petitioner's ineffective assistance of counsel claim," and that review of the merits of this decision is proper. (*See id.* at 25, 29.)

7

specific arguments concerning Petitioner's ties to the United States." (*Id.* at 2–3 (some alterations omitted).)

At the outset, the Court notes that Petitioner objects, in large part, to the R&R's overall finding that Petitioner did not demonstrate that it would have been rational for him to reject the plea. (*See* R&R at 35.) But "rational rejection" is only one of at least two requirements that Petitioner must satisfy to demonstrate prejudice. Indeed, under *Hill*, Petitioner still must actually "allege *in his habeas petition* that," if counsel had advised him that deportation would be mandatory, "he would have pleaded not guilty and insisted on going to trial." *Hill*, 474 U.S. at 60 (emphasis added). After a careful and thorough review of the Petition, Petitioner's Reply Memorandum, and his Objections—which, the Court notes, were all drafted by appointed counsel—the Court can find no such allegation. And it especially cannot find any instance where Petitioner alleges "special circumstances that might support the conclusion that he placed particular emphasis" on the deportation issue "in deciding whether or not to plead guilty." *Id.* Instead, the Petition contains the argument that "it would have been rational to reject the plea had the Petitioner been aware of the consequences—mandatory removal." (Pet. at 9.) And it notes that "[d]eportation can result in loss . . . of all that makes life worth living." (*Id.* (internal quotation marks omitted) (second alteration in original).) But even if Petitioner were correct that it would have been rational for him to reject the plea, he *never specifically alleges* that he would have, *in fact*, rejected the plea had he known that deportation was mandatory. Thus, where Petitioner fails to make even a conclusory allegation that he would have gone to trial, he has not come close to meeting his burden affirmatively to demonstrate prejudice. *See Boakye v. United States*, No. 09-CV-8217, 2010 WL 1645055, at *6 (S.D.N.Y. Apr. 22, 2010) ("The conclusory

8

claim in Petitioner's brief that he would have gone to trial but for counsel's alleged

ineffectiveness, standing alone, does not establish prejudice under *Strickland*."); *Scott v.*

*Superintendent, Mid-Orange Corr. Facility*, No. 03-CV-6383, 2006 WL 3095760, at *9

(E.D.N.Y. Oct. 31, 2006) ("[C]onclusory allegations that a defendant would have insisted on

proceeding to trial are generally insufficient to establish actual prejudice under *Strickland*.").

At best, Petitioner's submissions can be read to imply (but not allege) that deportation

was such an extreme consequence that, had Petitioner known that it was a mandatory and

inevitable consequence of his guilty plea, he would have chosen to go to trial and risk at least the

possibility of an acquittal. (*See* Objs. at 2 ("The possibility remains that Petitioner could have

been successful at trial.").) However, when evaluating whether a petitioner would have accepted

a plea had his counsel not been deficient, the Second Circuit has recognized that "[its] precedent

requires some objective evidence other than defendant's assertions to establish prejudice." *Pham*

*v. United States*, 317 F.3d 178, 182 (2d Cir. 2003); *see also Francis*, 2013 WL 673868, at *4 ("In

the immigration context, a petitioner must affirmatively prove prejudice by putting forth credible

evidence that he would actually have insisted on going to trial had he known of the precise

immigration consequences of his conviction." (internal quotation marks omitted)); *Zhang v.*

*United States*, 543 F. Supp. 2d 175, 185 (E.D.N.Y. 2008) ("Even if [the petitioner] had been

informed that a conviction for an aggravated felony would result in mandatory deportation, there

is no evidence that he would have chosen to proceed to trial."); *United States v. Guidice*, No. 02-

CR-729, 2004 WL 1152539, at *6 (S.D.N.Y. May 21, 2004) (finding no prejudice where

petitioner "ha[d] not introduced any evidence upon which a finding of prejudice could be based,"

including "any affidavit representing that he would have chosen to proceed to trial if he had been

9

informed by [counsel]" of an error). And "[t]he fact of certain removal . . . does not, without more, constitute 'objective evidence' of what [Petitioner] was reasonably likely to do had he received accurate advice." *Gomez v. United States*, No. 10-CV-1886, 2013 WL 66080, at *6 (E.D.N.Y. Jan. 4, 2013) (quoting *Pham*, 317 F.3d at 182).

In *Gomez v. United States*, as here, the petitioner faced mandatory removal under 8 U.S.C. § 1227(a)(2)(B)(i), and he alleged that his counsel misinformed him of the deportation consequences of his guilty plea. *See id.* at *3. However, the petitioner also conceded that he "was informed . . . that deportation was at least a possible consequence of his plea, and he nonetheless accepted the government's cooperation agreement." *Id.* at *6. Moreover, the court found that there was "overwhelming evidence supporting [the] conviction," and that, "[h]ad [petitioner] proceeded to trial, . . . [he] risked a substantially harsher sentence" than the one he received as a result of his plea. *Id.* at *7. The court thus denied the petition because petitioner "offer[ed] no evidence that his prospects had he proceeded to trial offered a realistic possibility of a better outcome such that he would have rationally chosen to take the risk of a harsher sentence rather than accept the plea." *Id.*

Similarly, in *Francis v. United States*, the petitioner faced mandatory removal under 8 U.S.C. § 1227(a)(2)(A)(iii), a provision that, like the provision here, provides for mandatory removal upon conviction of certain crimes. 2013 WL 673868, at *1. But, unlike here, petitioner "ha[d] presented more than conclusory allegations" that he would have insisted on going to trial, including evidence of strong ties to the United States and weak ties to his country of origin, evidence that his guilty plea did not guarantee him a lesser sentence, and evidence that his conviction at trial was not predetermined because he had a strong defense. *Id.* at *4.

10

Nevertheless, the court denied his petition, finding that "the evidence against [petitioner] was

strong," and that "[p]etitioner benefited from the plea" despite the lack of a promise of a lesser

sentence. *Id.* at *4–5. Moreover, in response to the petitioner's arguments concerning his strong

ties to the United States, the court found that "even if a petitioner can demonstrate extraordinary

circumstances that would make a seemingly irrational choice to go to trial appear more

reasonable, that petitioner still must demonstrate that going to trial could have resulted in a

different outcome." *Id.* at *6. The court thus ultimately denied the petition because the

petitioner presented no evidence showing "that he could have *succeeded* in avoiding conviction

following a trial or that he could have avoided deportation." *Id.* (internal quotation marks and

citations omitted).

The R&R recommended denial of the Petition on grounds similar to those articulated in

*Gomez* and *Francis*. First, it concluded that "[t]he strength of th[e] evidence . . . weighs against a

finding of prejudice," specifically finding that

> the prosecution's case included evidence that a clear plastic bag containing a white
> substance was recovered from Petitioner's pants following a police search, as well
> as a laboratory report confirming that the recovered substance indeed was cocaine
> and that it weighed in excess of one half-ounce, as required for conviction under New
> York Penal Law § 220.16(12).

(R&R at 35.) Second, it found that Petitioner benefitted from the guilty plea. Not only did

Petitioner "receive[] a recommendation from the prosecution of only four years imprisonment

instead of a possible maximum term of nine years," Petitioner also ultimately received "the one-

year minimum sentence[,] which was substantially *below* the prosecutor's recommendation."

(*Id.* at 36.) Third, it found that the Petition "offered no specific arguments regarding

[Petitioner's] ties to the United States," such as familial ties, that would otherwise inform the

11

analysis of whether he would have rejected the plea. (*Id.* at 36–37.) Based on these findings, the

R&R found that "Petitioner has not established prejudice because he 'is unable to show that the

outcome in his case would have resulted in anything but his being deported.'" (*Id.* at 37 (quoting

*Francis*, 2013 WL 673868, at *6–7).)

Petitioner's objections challenge each of the R&R's specific findings supporting its

general conclusion that Petitioner failed to demonstrate prejudice. First, Petitioner argues that

the Court cannot consider the "strength of the evidence" against him, because his "position is . . .

that he had no burden to present any evidence of his innocence or on his behalf, and this Court

does not know of what potential testimony the Petitioner could have provided at trial, since he

entered a guilty plea." (Objs. at 3.) And he argues that the R&R inappropriately considered

Petitioner's guilty plea in making this determination. (*See id.* at 3; R&R at 35 ("The strength of

this evidence, as well as Petitioner's having acknowledged his guilt, weighs against a finding of

prejudice.").) Petitioner may be correct that he could have been acquitted at trial. And he is

certainly correct that "this Court does not know of what potential testimony the Petitioner could

have provided at trial." (Objs. at 3.) But Petitioner's objections miss the point, because it is *his*

burden under *Strickland* "affirmatively [to] prove prejudice." *Strickland*, 466 U.S. at 693. Thus,

in the face of what the R&R found is strong evidence indicating that Petitioner would have been

convicted at trial, Petitioner's failure to point to *any* evidence that he would have succeeded at

trial is fatal to his ability to demonstrate prejudice. Moreover, the R&R's reference to

Petitioner's "acknowledg[ment] [of] his guilt" merely alludes to a possible explanation for this

lack of evidence, as Petitioner himself admitted under oath that he was guilty of the crime, and

"he does not now assert that he is in fact innocent of these crimes." *See Francis*, 2013 WL

12

673868, at *4. The Court has not determined, based on the guilty plea, that Petitioner *could not* offer evidence in his defense. It has merely determined, instead, that Petitioner *did not* offer such evidence. And it further observes that Petitioner's implicit acknowledgment of his guilt by failing to argue his innocence at this stage despite his guilty plea may provide at least one reason. Thus, given the strength of the evidence against him, and given his failure even now to assert his innocence or to identify any way in which he could have succeeded at trial, Petitioner "cannot demonstrate that the case against him could have resulted in anything but eventual deportation, regardless of his decision to plead guilty or to proceed to trial." *Id.*

Second, in response to the R&R's finding that Petitioner benefitted from the plea, Petitioner objects that "the record demonstrate[s] that [he] was never promised—or guaranteed—to receive any particular benefit from pleading guilty, either by the trial court or the prosecution," and thus that he "entered the guilty plea without the promise of leniency." (Objs. at 2.) When confronted with a similar argument, the courts in *Gomez* and *Francis* rejected the notion that a guarantee of leniency is required when a petitioner actually benefitted from leniency as a result of his plea. *See Francis*, 2013 WL 673868, at *5 (finding that guilty plea resulted in actual sentencing benefit from lower offense level used in Sentencing Guidelines calculation); *Gomez*, 2013 WL 66080, at *7 (finding that guilty plea resulted in actual sentencing benefit where petitioner received time served after spending three years in jail, as opposed to "risk[ing] a substantially harsher sentence . . . of ten years to life" by proceeding to trial). Here, Petitioner benefitted from the plea, first, when he received a recommendation for a lower sentence from the prosecutor, and, second, when he in fact received a sentence from the court that was even lower than that recommendation—and much lower than the statutory maximum. (*See* R&R at 36.) In

line with *Francis* and *Gomez*, the Court finds that the Petitioner has offered no evidence

demonstrating why "he would have foregone the substantial benefit resulting from his plea and

risked a harsher sentence at trial." *Francis*, 2013 WL 673868, at *5 (internal quotation marks

omitted).

      Third, in response to the R&R's consideration of Petitioner's ties to the United States,

Petitioner argues that "the record indicates that the Petitioner does have sufficient ties to the

Untied States," specifically "a wife . . . who is a United States citizen." (Objs. at 2–3.) In

making this argument, Petitioner implies—but, again, does not offer evidence or even

specifically allege—that this tie would have been strong enough to cause him to risk going to

trial to avoid deportation. Indeed, Petitioner alleges only that he is *married* to a United States

citizen—a "tie" to the United States that he describes as "sufficient." (*Id.*) However, he does not

make the necessary allegation that his marriage would have *influenced his decision* to enter a

guilty plea. For example, Petitioner does not allege that he had a strong marriage, that he had

fathered children through the marriage, that his wife was in any way dependent on him for

support, or that the marriage in some other way would have motivated him to reject the plea

based on the mandatory-deportation consequence.[3] And in the context of this argument,

"[P]etitioner still must demonstrate that going to trial could have resulted in a different

outcome." *Francis*, 2013 WL 673868, at *6. Otherwise, Petitioner fails to demonstrate

---

[3] The Court further notes that Petitioner's bare-bones allegation that he is married to a United
States citizen is much weaker than the unsuccessful petitioner's allegations in *Francis*, which
included that the petitioner had lived in the United States for thirty years, that he had three
children that he cared for as a single father and another child who lived with its mother, and that
"he had no connection with, and no interest in returning to," his country of origin. *Francis*, 2013
WL 673868, at *4 & n.4.

14

prejudice under *Strickland*, because he cannot prove "that he could have avoided deportation." *Id.* Thus, given Petitioner's failure to challenge the R&R's finding—which the Court now adopts—that the evidence against Petitioner was strong and that Petitioner likely would have been convicted at trial even if he had rejected his guilty plea, Petitioner fails to demonstrate how his strong ties to the United States would have affected his decision to enter the guilty plea because those ties would have been severed even had Petitioner gone to trial.

In sum, the Court denies the Petition because Petitioner failed to make even a conclusory allegation that he actually would have rejected the guilty plea and gone to trial had he been informed of the deportation consequences of the plea. But even construing the Petition to have made such an allegation, the Court still denies it because Petitioner has failed to provide objective evidence that going to trial would not have resulted in deportation. And, in the context of AEDPA, even if the Court agreed with Petitioner's argument, it cannot say that the state court's judgment rejecting this argument represents an "extreme malfunction[] in the state criminal justice system[]," or that "there is [no] reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 786, 788 (internal quotation marks omitted).

### 2. Certificate of Appealability

Petitioner also objects to the R&R's recommendation that the Court decline to issue a Certificate of Appealability ("COA"). (*See* Objs. at 4.) Under AEDPA, a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a showing "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529

15

U.S. 473, 484 (2000). Petitioner argues that, here, "[a]ny reasonable jurist would clearly find that failing to be advised of mandatory consequences of pleading guilty to a crime deprives a defendant of a constitutional right." (Objs. at 4.) But where Petitioner must affirmatively demonstrate prejudice by alleging that he would have rejected the plea had he been advised of the deportation consequences, and where Petitioner has decidedly failed to do so, no reasonable jurist would agree that Petitioner has successfully alleged a constitutional claim. In other words, the Court does not find that counsel's performance was not deficient. And it does not find that Petitioner actually suffered no prejudice as a result of allegedly deficient performance. Instead, it finds only that Petitioner has failed to meet his burden affirmatively to demonstrate such prejudice because he has offered no evidence and he has failed to make even a conclusory allegation to that effect. The Court thus finds that no reasonable jurist would agree with Petitioner that, having failed to make the necessary evidence-backed allegations, he has nevertheless demonstrated that he was denied a constitutional right. *Cf. Gomez*, 2013 WL 66080, at *8 (declining to issue a COA for similar reasons). Accordingly, the Court agrees with the R&R that no COA should issue.

### III.  Conclusion

Based on the foregoing analysis, the Court denies the Petition because Petitioner has failed to demonstrate that counsel's alleged ineffectiveness resulted in prejudice. Accordingly, it is

ORDERED that the Report and Recommendation dated April 4, 2013, is ADOPTED to the extent it is consistent with this Opinion. It is further

16

ORDERED that Petitioner's writ of habeas corpus is DISMISSED with prejudice.  It is further

ORDERED that a Certificate of Appealability shall not be issued, and that, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this judgment on the merits would not be taken in good faith.

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

Dated:        December 6, 2013
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

17